**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dylan McKinstry, | No. CV-22-08053-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Dylan McKinstry's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial. The Court now addresses Plaintiff's Opening Brief (Doc. 16, "Pl. Br.") and Defendant Social Security Administration Commissioner's Response Brief (Doc. 17, "Def. Br."). Plaintiff did not file a brief in reply. The Court has reviewed the briefs and Administrative Record (Doc. 15, "R.") and now affirms the Administrative Law Judge's ("ALJ") decision (R. at 13–26) as upheld by the Appeals Council (R. at 1–6).

**I.    BACKGROUND**

Plaintiff filed his Application for Social Security Disability Insurance benefits on January 30, 2020, for a period of disability with an amended onset date of July 27, 2019. (R. at 13.) His claim was denied initially on July 14, 2020, and upon reconsideration on September 10, 2020. (*Id.*) On June 15, 2021, Plaintiff appeared before the ALJ for a telephonic hearing regarding his claim. (*Id.*) The ALJ denied Plaintiff's claim on July 12,

1  2021. (R. at 13–26.[1]) On March 31, 2022, the Appeals Council denied Plaintiff's Request

2  for Review of the ALJ's decision. (R. at 1–6.) This appeal followed.

3      The Court has reviewed the record and will discuss the pertinent evidence in

4  addressing the issues raised by the parties. Upon considering the medical records and

5  opinions, the ALJ evaluated Plaintiff's disability based on the severe impairments of major-

6  joints dysfunction, spine disorders, epilepsy, depressive disorder, and anxiety disorder, and

7  non-severe impairments of obesity, asthma, posttraumatic stress disorder ("PTSD"), and

8  attention deficit hyperactivity disorder ("ADHD"). (R. at 16.) Ultimately, the ALJ

9  evaluated the medical evidence and testimony from Plaintiff and a vocational expert

10  ("VE") and concluded Plaintiff was not disabled for the period beginning July 27, 2019.

11  (R. 16–26.) In so doing, the ALJ first determined that Plaintiff "does not have an

12  impairment or combination of impairments that meets or medically equals the severity of

13  one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 16–

14  18.) The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")

15  > to perform sedentary work . . . except: The claimant cannot climb ramps,
16  > stairs, ladders, ropes or scaffolds. The claimant can frequently stoop and
17  > occasionally balance, kneel, crouch and crawl. The claimant can frequently
     > push/pull and reach forward and overhead with the right upper extremity.
18  > The claimant can occasionally be exposed to fumes and dusts. The claimant
     > must avoid all exposure to moving machinery and unprotected heights. The
19  > claimant can perform simple, routine and repetitive work tasks. The claimant
     > can occasionally interact with the public and coworkers.
20

21  (R. at 18.) Accordingly, the ALJ found Plaintiff was unable to perform any past relevant

22  work, but based on his age, education, work experience, and RFC, "there are jobs that exist

23  in significant numbers in the national economy that [Plaintiff] can perform," namely those

24  of addresser and document preparer. (R. at 25.) The ALJ therefore determined Plaintiff is

25  not under a disability as defined in the Act. (R. at 25–26.)

26  [1] Plaintiff previously applied for, and was denied, benefits in a decision issued on July 26, 2019. (R. at 13.) Accordingly, in considering the instant Application, the ALJ found the
27  presumption of continuing non-disability applied. (*Id.* (citing *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).) However, the ALJ found the presumption rebutted by the presentation
28  of new and material evidence constituting a changed circumstance and therefore declined to adopt the prior decisions' residual-function-capacity findings. (*Id.*)

1    **II.    LEGAL STANDARD**

2    In determining whether to reverse an ALJ's decision, the district court reviews only

3    those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,

4    517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability

5    determination only if the determination is not supported by substantial evidence or is based

6    on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is

7    more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable

8    person might accept as adequate to support a conclusion considering the record as a whole.

9    *Id*.; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether

10   substantial evidence supports a decision, the Court must consider the record as a whole and

11   may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*.

12   Generally, "[w]here the evidence is susceptible to more than one rational interpretation,

13   one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*

14   *v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

15   To determine whether a claimant is disabled for purposes of the Act, the ALJ

16   follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of

17   proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*

18   *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether

19   the claimant is presently engaging in substantial gainful activity. 20 C.F.R.

20   § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step

21   two, the ALJ determines whether the claimant has a "severe" medically determinable

22   physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not

23   disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's

24   impairment or combination of impairments meets or medically equals an impairment listed

25   in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so,

26   the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four.

27   *Id*. At step four, the ALJ assesses the claimant's residual functional capacity and

28   determines whether the claimant is still capable of performing past relevant work.

- 3 -

1    20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.*

2    If not, the ALJ proceeds to the fifth and final step, where she determines whether the

3    claimant can perform any other work in the national economy based on the claimant's RFC,

4    age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is

5    not disabled. *Id.* If not, the claimant is disabled. *Id.*

6    **III.    ANALYSIS**

7           Plaintiff raises two arguments for the Court's consideration. First, he argues that the

8    ALJ's RFC determination and the hypothetical the ALJ posed to the vocational expert

9    failed to properly account for Plaintiff's limitation involving his ability to understand,

10   remember, or apply information. (Pl. Br. at 4–14.) Second, Plaintiff argues the ALJ failed

11   to sufficiently address his severe impairment of epilepsy in formulating his RFC. (*Id.* at

12   14–18.) The Court examines these arguments in turn.

13           **A.     Consideration of Plaintiff's Limitation in Understanding,
                      Remembering, or Applying Information**
14

15           At the second step of the sequential analysis, the ALJ found Plaintiff had the severe

16   mental impairments of depressive and anxiety disorders and non-severe impairments of

17   PTSD and ADHD. (R. at 16.) At the third step, the ALJ found these impairments did not

18   meet or equal the severity of any regulation-listed impairment. (R. at 16–18.) In evaluating

19   these impairments under the four functional-limitation areas known as the Paragraph B

20   criteria, the ALJ found Plaintiff had a moderate limitation in understanding, remembering,

21   or applying information, but found he "still has the ability to comprehend and apply learned

22   information in a manner that would allow for completion of tasks commonly found in work

23   settings despite his mental impairments." (R. at 17.) In determining Plaintiff's RFC at steps

24   four and five, the ALJ found Plaintiff "can perform simple, routine and repetitive work

25   tasks" and "can occasionally interact with the public and coworkers." (R. at 18.)

26           Plaintiff contends that in determining his RFC and formulating the hypothetical he

27   posed to the VE, the ALJ failed to properly account for his moderate limitation in

28   understanding, remembering, or applying information. He argues that while the RFC

1    accounted for Plaintiff's limitations related to his ability to perform tasks, the ALJ "failed
2    to address his capacity to carry out instructions." (Pl. Br. at 6.) He posits this error was
3    material because tasks and instructions are distinct work-related considerations, but neither
4    the RFC nor vocational-expert hypothetical contained a "limitation that accounted for his
5    inability to carry out detailed instructions." (*Id*. at 9.) Thus, he contends the ALJ's RFC
6    determination and step-five findings are not supported by substantial evidence. Defendant
7    argues the ALJ's findings are supported by substantial evidence and free of legal error.

8        The Court is not persuaded that the ALJ erred in formulating Plaintiff's RFC.
9    Plaintiff cites no regulation or binding caselaw requiring the ALJ to explicitly address a
10   claimant's limitations relating to his ability to carry out instructions in determining his
11   RFC. Here, the ALJ properly considered and addressed that limitation at step three, *see*
12   20 C.R.F. § 404.1520a(c)(3), and then stated that his RFC determination "reflect[ed] the
13   degree of limitation" identified at step three. (R. at 18.) Plaintiff cites no authority requiring
14   the ALJ to explicitly address that limitation at steps four and five. At those steps, the ALJ
15   must consider "all of the relevant medical and other evidence." *Id*. § 416.945(a)(3). While
16   the regulations also state that "[a] limited ability to carry out certain mental activities, such
17   as limitations in understanding, remembering, and carrying out instructions . . . may reduce
18   your ability to do past work and other work," *id*. § 416.945(c), this does not amount to a
19   requirement that the ALJ explicitly address such limitations in every RFC determination.

20       Nor was the ALJ's RFC determination inconsistent with his step-three findings. In
21   determining Plaintiff's RFC (R. at 21–24), the ALJ considered and discussed record
22   evidence that mental status examination revealed "generally normal findings," noting there
23   were "no valid findings in the record" to support his claimed memory difficulties; physical
24   examinations documented he was "alert, oriented, cooperative"; his "mental impairments
25   are managed by medication and therapy"; he was able to complete tasks relating to personal
26   care, household chores, and caring for his five children; and neuropsychological findings
27   during independent evaluations lacked validity because the evaluators themselves stated
28   they should be "viewed with caution" (R. at 432) or should simply be "considered invalid."

1
2
3
4
5
6
7
8
9

(R. at 3372.) On the other hand, the ALJ partially credited Plaintiff's testimony and found he would have "some difficulty performing complex tasks and getting along with others." (R. at 24.) The ALJ therefore found Plaintiff was limited to "simple, routine, and repetitive work tasks with limited contact with the public and coworkers." (*Id.*) In light of the record, the Court is not persuaded the RFC findings are inconsistent with, or fail to account for, the step-three limitations. *See, e.g.*, *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (rejecting the argument that an RFC limited to "simple, routine, repetitive sedentary work" failed to account for "deficiency in pace and other mental limitations"). For the same reasons, the Court finds no error in the hypothetical posed to the VE.

10
11
12
13
14
15

The remaining question is whether there is a conflict between the VE's testimony and the jobs he found Plaintiff can perform as described in the Dictionary of Occupational Titles ("DOT"). Where the is a conflict between the VE's testimony and the DOT, "the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (citation and quotation marks omitted). The conflict must be "obvious or apparent." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017).

16
17
18
19
20
21
22
23

As Plaintiff notes, the job of addresser requires Level Two reasoning under the DOT.[2] Plaintiff argues this is "incompatible with the RFC because it requires the ability to carry out detailed and uninvolved instructions." (Pl. Br. at 9.) In support, Plaintiff cites *Rounds v. Social Security Commissioner*, in which the Ninth Circuit found a conflict between an RFC limiting the claimant "to performing one- and two-step tasks, and the demands of Level Two reasoning." 807 F.3d 996, 1003 (9th Cir. 2015) (quoting DOT, App. C., § III). The *Rounds* court explained that "one to two step tasks" had an "obvious similarity" to Level One reasoning and "concomitant contrast" to Level Two reasoning, so

24
25
26
27
28

[2] The DOT is the SSA's "primary source of reliable job information regarding jobs that exist in the national economy." *Zavalin*, 778 F.3d at 845–46. It "describes the requirements for each listed occupation, including the necessary General Educational Development ('GED') levels," which refer to "aspects of education (formal and informal) . . . required of the worker for satisfactory job performance" and which range from Levels One to Six. *Id.* (citing DOT, App. C, 1991 WL 688702 (4th ed.1991)). Level Two requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *Id.* at 847.

1    the VE's testimony that the claimant could perform jobs requiring Level Two reasoning

2    created an apparent conflict. *Id*. Because the ALJ did not recognize this conflict and inquire

3    whether it could be resolved, the Ninth Circuit remanded for the ALJ to determine "whether

4    there is a reasonable explanation to justify relying on the VE's testimony." *Id*. at 1004.

5    Here, however, Plaintiff's RFC was not specifically limited to "one- and two-step tasks,"

6    but to "simple, routine, and repetitive ones." (R. at 18.) The *Rounds* court found this

7    distinction significant, noting "unpublished decisions of panels of [the Ninth Circuit] and

8    opinions from some of our sister circuits have concluded that an RFC limitation to 'simple'

9    or 'repetitive' tasks is consistent with Level Two reasoning." 807 F.3d at 1004 n. 6 (citing

10   cases). The Court finds that the job of addresser is not clearly incompatible with Plaintiff's

11   RFC so as to create an apparent conflict.

12          The same is not necessarily true of the job of document preparer, which requires

13   Level Three reasoning under the DOT.[3] In *Zavalin v. Colvin*, the Ninth Circuit held "there

14   is an apparent conflict between the residual functional capacity to perform simple,

15   repetitive tasks, and the demands of Level Three reasoning." 778 F.3d at 847. In a recent

16   unpublished decision, *Rasmussen v. Kijakazi*, the Ninth Circuit held it was error for the

17   ALJ to find the claimant was limited to performing "simple, routine, repetitive one to three

18   step tasks" yet rely on the job of document preparer at step five given the "apparent

19   conflict" between the two. No. 21-35468, 2022 WL 2287566, at *1 (9th Cir. June 24, 2022).

20          Nonetheless, there are distinctions between these cases and the case at bar. Unlike

21   in *Rasmussen*, Plaintiff's RFC was not limited based on the number of steps in work tasks.

22   Plaintiff would presumably argue this distinction inapposite based on his contention that

23   the ALJ's failure to address the number of steps he is capable of performing was itself

24   erroneous. But it is equally plausible the ALJ deliberately left this analysis out of Plaintiff's

25   RFC because he determined Plaintiff was not limited to a specific number of steps so long

26   as tasks remained "simple, routine, and repetitive." (*See* R. at 18.) Thus, Plaintiff's

27   _____

28   [3] Level Three requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Zavalin*, 778 F.3d at 847.

1   argument that "document preparers perform work that involves greater than two steps" (Pl.

2   Br. at 11) does not resolve whether he has the RFC to perform in that job.

3   In *Zavalin*, the Ninth Circuit found the claimant's education relevant, if not

4   dispositive, and noted he was in special-education classes and received a modified diploma.

5   778 F.3d at 847. Here, Plaintiff's high school diploma was apparently a typical one and he

6   previously performed more complex-reasoning work as a tech-support contractor and

7   AutoCAD operator. (R. at 24.) The VE contrasted these prior jobs Plaintiff could no longer

8   perform with the "simple" jobs of addresser and document preparer, suggesting the VE

9   understood the latter jobs as consistent with Plaintiff's RFC. (R. at 60.) Further, the ALJ

10  specifically found Plaintiff "has the ability to comprehend and apply learned information

11  in a manner that would allow for completion of tasks commonly found in work setting

12  despite his mental impairments" (R. at 17), suggesting the ALJ also found no conflict

13  between Plaintiff's RFC and the addresser and document preparer jobs.

14  These distinctions give the Court pause in concluding the conflict was sufficiently

15  "obvious or apparent to trigger the ALJ's obligation to inquire further." *Lamear*, 865 F.3d

16  at 1205. The Court need not decide the question, however, because any such error was

17  harmless. Even if the position of document preparer is excluded, the VE's undisputed

18  testimony that 35,000 addresser jobs exist in the national economy would suffice to meet

19  the Commissioner's burden at step five. (R. at 60.) *See Gutierrez v. Comm'r of Social Sec.*

20  *Admin.*, 740 F.3d 519, 528–29 (9th Cir. 2014) (finding 25,000 jobs a sufficiently

21  "significant number" within the meaning of the Act, though a "close call").[4]

22  **B.   Consideration of Plaintiff's Epilepsy**

23  Plaintiff argues the ALJ erred by formulating an RFC that insufficiently addressed

24  his severe impairment of epilepsy and, thus, "represents an incomplete assessment of [his]

25  ─────────────
[4] The Court acknowledges the doubts raised about "the very existence of the addresser and
26  other similar jobs as described by the DOT," which "has been called into question by a
    number of courts." *Katherine S.J. v. Berryhill*, No. ED CV 18-383-PLA, 2019 WL
27  1926309, at *7 (C.D. Cal. Apr. 30, 2019); *see also Hermann v. Colvin*, 772 F.3d 1110,
    1113 (7th Cir. 2014) (Posner, J.) (expressing doubts about the validity of DOT information
28  for jobs like "pin setter, phrenologist, leech collector, milkman, pony express rider, and
    daguerreotypist"). But Plaintiff did not challenge the VE's testimony or the ALJ's findings
    regarding the availability of addresser jobs, so the Court will not reverse on this ground.

1    true capacity to work" and is not supported by substantial evidence. (Pl. Br. at 14.)

2    Defendant argues the ALJ's RFC findings are supported by substantial evidence because

3    they included those limitations the ALJ found reliable. The Court agrees with Defendant.

4            Where the ALJ has applied the proper legal standard and substantial evidence

5    supports his RFC calculation, the Court will affirm it. *Bayliss v. Barnhart*, 427 F.3d 1211,

6    1217 (9th Cir. 2005). Here, the ALJ found that Plaintiff's epilepsy was a severe

7    impairment, consistent with the opinion of one of the state-agency physicians he found

8    "somewhat reliable." (R. at 16, 22; *see* R. at 142.) The other state-agency physician

9    determined Plaintiff's epilepsy was not severe. (R. at 165.) Both arrived at the conclusion

10   that Plaintiff's RFC should be limited to "[a]void all exposure" to hazards like machinery

11   and heights (R. at 146, 170), which the ALJ adopted. (R. at 18.) Defendant reasonably

12   posits—in an argument to which Plaintiff did not reply—that this limitation accounted for

13   his epilepsy. The ALJ also went further than the state-agency physicians to find Plaintiff

14   limited to sedentary work. (R. at 18, 22.) To the extent Plaintiff argues that finding epilepsy

15   to be a severe impairment required the ALJ to find further RFC limitations,[5] he cites no

16   authority to support this reasoning. The Ninth Circuit has rejected it in similar contexts.

17   *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228–29 (9th Cir. 2009)

18   ("[Claimant] offers no authority to support the proposition that a severe mental impairment

19   must correspond to limitations on a claimant's ability to perform basis work tasks.").

20           Plaintiff's testimony, if credited, supported further limitations due to his epilepsy.

21   (*E.g.*, 53–55.) The ALJ did not fully credit this testimony, however, which he he found

22   were "not supported by the record." (R. at 20.) The ALJ cited a treatment note suggesting

23   a reported seizure in April 2020 was caused by his failure to take medication (R. at 706),

24   supporting the reasonable inference that Plaintiff's seizures were effectively treated by

25   medication. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of

26   medical treatment successfully relieving symptoms can undermine a claim of disability.").

27
28   ---
     [5] The ALJ did not include the greater limitations assessed by neurologist Yasir Shareef, D.O., M.P.H. (R. at 426–29), because he found his opinion "not persuasive, as it is inconsistent with the evidence of record including Dr. Shareef's own treatment notes." (R. at 23.) Plaintiff does not argue on appeal that this conclusion was erroneous.

The ALJ also cited treatment notes documenting largely normal neurological-examination findings (R. at 430, 432, 434, 436, 442), undermining his allegations. *See Bray*, 554 F.3d at 1227 (upholding finding that claimant's testimony was not credible in part because her "statements at her hearing do not comport with objective evidence in her medical record"). These are sufficiently clear and convincing reasons for rejecting Plaintiff's testimony about the extent and severity of his epilepsy. *See id*.

**IV.    CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ's RFC determination is supported by substantial evidence and free of legal error and that any error in the ALJ's reliance on the VE's testimony did not materially affect the outcome of his step-five determination. Accordingly,

**IT IS THEREFORE ORDERED** affirming the July 12, 2021 decision of the Administrative Law Judge, as upheld by the Appeals Council on March 31, 2022.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 7th day of August, 2023.

Honorable John J. Tuchi
United States District Judge